736 P.2d 1309

**Robert C. VULK and Leona F. Vulk, Plaintiffs-Appellants,**

v.

**Joe HALEY, John Does I and II (unknown) Personal Representative of the Estate of Bret Haley, Defendants-Respondents.**

**No. 16302.**

Supreme Court of Idaho.

April 9, 1987.

John J. Healzer, Jerome, for plaintiffs-appellants.

Thomas B. High, Twin Falls, for defendants-respondents.

HUNTLEY, Justice.

In March 1984, a single vehicle accident took the lives of the driver, Bret Haley, and the passenger, Richard Vulk. Richard Vulk was seriously injured, but survived for seven hours before his eventual death. Robert Vulk (Vulk), the father and representative of Richard Vulk, brought a claim against the estate of Bret Haley. Vulk's complaint made claim for the wrongful death of his son, Richard; the loss of companionship, love and affection as a result of his son's death; and pain and suffering sustained by Richard Vulk. Upon Haley's motion to dismiss, the trial court dismissed Vulk's claim for damages related to the pain and suffering sustained by his son. Haley admitted liability for Richard Vulk's death. Therefore, the only issue tried by the jury was Vulk's claim for loss of affection, love and companionship.

The evidence presented at trial revealed that when Richard Vulk was fifteen years of age an application for detention was filed alleging that he was beyond the control of his parents. Hence, he was placed in the custody of the Aguirre family. The Aguirres were appointed as Richard's legal guardians, and he did not live with his biological father from August of 1979 to the date of his death.

The evidence also revealed that while Richard Vulk was living with the Aguirre family, Vulk never contacted his son, nor did he provide any financial support.

The jury returned a verdict of no damages for Vulk's loss of affection, love and companionship.

Vulk appeals the district court's dismissal of his pain and suffering claim, the court's allowing hearsay and opinion evidence, and the awarding of attorney fees and costs to the defendant.

We first address the issue of whether the district court erred in allowing hearsay and opinion evidence. The trial court permitted witnesses who were familiar with the relationship between Richard Vulk and his father to recite statements attributed to Richard Vulk regarding his relationship with his father. We affirm the trial court's allowance of the aforementioned testimony for two reasons.

First, the appellant fails to point to any particular or specific offending statement which should cause this court to reverse the trial court. Idaho Appellate Rule 35(a)(7) requires that the appellant identify findings of fact, statements of law, or applications of law to the facts which are arguably in error. However, the appellant in the instant action has asserted that the trial court erred by permitting witnesses to offer hearsay evidence, but there is no reference to the record to indicate which testimony should not have been allowed. This Court should not be required to search the record for error.

Second, the trial court was correct in permitting witnesses to testify as to statements made by Richard Vulk regarding the relationship between him and his father. These statements fall within the exceptions to hearsay provided in Rule 803, which provides in part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness.

Then existing mental, emotional or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.

The statements of Richard Vulk offered at trial clearly indicate the existing state of mind and emotion of the decedent and, therefore, fall within the Rule 803(3) exception to hearsay.

In *Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979), this Court recognized that the admissibility of testimony relating to statements made by deceased individuals is within the discretion of the trial court. Further, in *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), this Court held that the trial court's exercise of its discretion in the admission of evidence would not be overturned in the absence of abuse of discretion. There is no indication that the trial court abused its discretion in permitting challenged statements of Richard Vulk into evidence. Therefore, we affirm the trial court's admission of hearsay and opinion evidence relating to Richard Vulk's relationship with his father.

At common law, a cause of action did not survive the death of either party and could not be continued by a representative of the decedent.

Idaho Code section 5–311 created a new cause of action for wrongful death:

5–311. **Suit for wrongful death by or against heirs or personal representatives—Damages.—**(1) When the death of a person is caused by the wrongful act or neglect of another, his or her heirs or personal representatives on their behalf may maintain an action for damages against the person causing the death, or in case of the death of such wrongdoer, against the personal representative of such wrongdoer, whether the wrongdoer dies before or after the death of the person injured. If any other person is responsible for any such wrongful act or neglect, the action may also be main-

tained against such other person, or in case of his or her death, his or her personal representatives. In every action under this section, such damages may be given as under all the circumstances of the case as may be just.

(2) For the purposes of subsection (1) of this section, "Heirs" mean:

(a) Those persons who would be entitled to succeed to the property of the decedent according to the provisions of subsection (21) of section 15-1-201, Idaho Code.

(b) Whether or not qualified under subsection (2)(a) of this section, the decedent's spouse, children, stepchildren, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters. It includes the illegitimate child of a mother, but not the illegitimate child of the father unless the father has recognized a responsibility for the child's support.

1. "Support" includes contributions in kind as well as money.

2. "Services" mean tasks, usually of a household nature, regularly performed by the decedent that will be a necessary expense to the heirs of the decedent. These services may vary according to the identity of the decedent and heir and shall be determined under the particular facts of each case.

(c) Whether or not qualified under subsection (2)(a) or (2)(b) of this section, the putative spouse of the decedent, if he or she was dependent on the decedent for support or services. As used in this subsection, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

(d) Nothing in this section shall be construed to change or modify the definition

of "heirs" under any other provision of law.

In *Russell v. Cox*, 65 Idaho 534, 148 P.2d 221 (1944) this Court recognized that I.C. § 5–311 did not create a right for a survival action, but a new cause of action for the benefit of the heirs. The issue of survivability was also addressed in *Volk v. Baldazo*, 103 Idaho 570, 651 P.2d 11 (1982). The court again established that the survivability of an action was not the rule of law in Idaho:

We deem it well-settled that statutes authorizing actions for wrongful death are remedial in nature, designed to alleviate the harsh rule of common law that if an injured person died, his cause of action ceases to exist. 103 Idaho at 573, 651 P.2d at 14.

▬ The actions authorized by I.C. § 5–310[1] and I.C. § 5–311 are not actions arising for the surviving rights of a decedent, *Russell v. Cox, supra*, but rather are compensatory and enacted for the benefit of the named survivors.

Since pain and suffering are personal to the deceased and are not damages suffered by the survivors, an action for pain and suffering under I.C. § 5–311 does not survive death. In *Eades v. House*, 3 Ariz.App. 245, 413 P.2d 576 (1966), the Arizona court was faced with the decision of whether an action for pain and suffering could survive the death of an injured person when death occurred during an appeal from judgment of the lower court. The Arizona court noted that a cause of action by the plaintiff for pain and suffering remains a cause of action for pain and suffering until it is reduced to a judgment. The court further reasoned as follows:

There being no judgment in the instant case for and on behalf of plaintiff for her pain and suffering, the cause of action

---

1. 5–310. **Action for injury to unmarried child.**—The parents may maintain an action for the injury of an unmarried minor child, and for the injury of a minor child who was married at the time of his injury and whose spouse died as a result of the same occurrence and who leaves no issue, and a guardian for the injury of his ward, when such injury is caused by the wrong-

ful act or neglect of another, but if either the father or mother be dead or has abandoned his or her family, the other is entitled to sue alone. Such action may be maintained against the person causing the injury, or if such person be employed by another person, who is responsible for his conduct, also against such other person.

abates upon her death. It is no more illogical for the legislature to provide that the action shall abate upon the death of the plaintiff where, as in the instant case, the plaintiff dies while the matter is on appeal from a defendant's verdict, than to provide that the plaintiff's cause of action abates upon death after the accident, but before a trial on the merits may be had in the matter. 413 P.2d at 578.

In *Harrington v. Flanders*, 2 Ariz.App. 265, 407 P.2d 946, 948 (1966), the court stated that "the right to damages for pain and suffering after the death of a plaintiff in a personal injury action was nonexistent at common law and is neither preserved in nor granted by the Constitution." The Arizona court also acknowledged the validity of the philosophy behind denying damages for pain and suffering after the death of the injured. The philosophy, simply stated, is that an injured person who is dead cannot benefit from an award for *his* pain and suffering.

█ Therefore, an action for pain and suffering does not survive the death of the injured. (But see, *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975), and cf. *Doggett v. Boiler Engineering and Supply Co.*, 93 Idaho 888, 477 P.2d 511 (1970)). The trial court's dismissal of the pain and suffering issue is affirmed.

We next address the award of attorney fees. The trial court initially awarded attorney fees under I.R.C.P. 68.[2]

I.R.C.P. Rule 68 is patterned after Federal Rule 68. In *Coleman v. McLaren*, 92 F.R.D. 754 (N.D.Ill.1981), later proceeding, 98 F.R.D. 638 (N.D.Ill.1983), motion den. 572 F.Supp. 178 (N.D.Ill.1983), later proceeding, 631 F.Supp. 749 (N.D.Ill.1985), later proceeding, 631 F.Supp. 763 (N.D.Ill. 1986), the plaintiff sought attorney fees under Rule 68 and the court rejected the petition, specifically stating that Rule 68 does not provide for attorney fees.

█ Rule 68 is intended to protect a defendant against a plaintiff's claim for costs where the defendant has made a reasonable offer of judgment and where the verdict recovered by the plaintiff is less favorable than the offer. Rule 68 does not include attorney fees.

On December 17, 1985, the court entered an order granting Haley a judgment of $23,445.86, which included $20,310.80 in attorney fees pursuant to I.R.C.P. Rule 68. At this time, the trial court ruled that Vulk's case had not been frivolously pursued without merit or foundation.

On March 7, 1986, Vulk filed a motion to stay judgment. The court heard argument on the motion on March 17, 1986. Vulk argued that attorney fees are not included as costs under Rule 68.

Three months after the trial court entered the order granting Haley attorney's fees pursuant to Rule 68, the court issued its memorandum decision on Vulk's motion to stay judgment. The court stated that the appeal to the Supreme Court removed the case from its jurisdiction and, there-

2. **Rule 68. Offer of judgment.**—At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, which offer of judgment shall be deemed to include all claims recoverable including any attorneys fees allowable by contract or the law and costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the judgment shall be entered for the amount of the offer without costs. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to deter-

mine costs. If the judgment, including attorneys fees and costs, finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs, as allowed under Rule 54(d)(1), incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

**860**

fore, the court reasoned that it could not reconsider the judgment it had entered on December 17, 1985. However, in this same memorandum opinion, the lower court offered for the first time the opinion that the suit had been "prosecuted frivolously, unreasonably, and without foundation."

 There was no motion made to alter or amend the judgment of December 17, 1985 (which awarded the attorney fees) within ten days. Therefore, the district judge did not have jurisdiction to amend that judgment to change it from a Rule 68 award of attorney fees to an I.C. § 12–121 and Rule 54(e) award. Further, a father and son possess a unique relationship. Despite the temporary estrangement, it would be the unusual case where a father's action in seeking damages for the loss of his son would be considered frivolous.

We reverse the district court's award of attorney fees.

DONALDSON, BAKES and BISTLINE, JJ., concur.

SHEPARD, C.J., concurs and dissents in part.

SHEPARD, Chief Justice, concurs and dissents in part.

I concur in the majority opinion as to that portion which reverses the district court's award of attorney fees. I agree that ordinarily a father and son possess a unique relationship, but view the record here as demonstrating more than a temporary estrangement, and hence it would be "the unusual case" to which the majority refers.